## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| JOHN G. SINGLETARY Voter and Candidate for Mayor of North Charleston | ) ) ) ) | CIVIL ACTION |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. 2021-CV-_____ |
| | ) | 2:22-cv-3888-BHH-MGB |
| Election System & Software (ESS), South Carolina Election Commission (SEC), Charleston County Board of Election & Voter Registration, Dorchester County Board of Election & Voter Registration, City of North Charleston, Marci Andino in her personal capacity, Joe Debney, Larry Cramer, Todd Billman, Beverly Varnado, Queen Bowman, Carolyn Lecque, ~~Queen Bowman~~, Samuel Howell, ~~Frank~~ Grace Boland, Ed Barfield, Brady Hair, Ron Brinson, Keith Summey and other to be named, all jointly and severely ( all in their official capacity accept Marci Andino, Todd Billman, and Joe Debney in their personal capacity included. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **COMPLAINT FOR DAMAGES DEMAND FOR JURY TRIAL** |
| Defendants. | | |

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1. **STRICT LIABILITY FAILURE TO WARN**
2. **STRICT LIABILITY DESIGN DEFECT**

- 1 -

3.  NEGLIGENCE PER SE
4.  BREACH OF EXPRESS WARRANTY
5.  BREACH OF IMPLIED WARRANTY
6.  VIOLATION OF CONSUMER FRAUD AND UNFAIR AND DECEPTIVE TRADE PRACTICES Title 39 Chapter 5 Article 1 Section 20(a)
7.  SC BREACH OF CONTRACT (Title 15 Chapter Article 5 Section 530 (1)
8.  VIOLATION OF 42 U.S.C. § 1983
9.  VIOLATION OF 42 U.S.C. § 1985
10. VIOLATION OF 42 U.S.C. § 1986
11. VIOLATION OF THE 1st AMENDMENT
12. VIOLATION OF THE 14TH AMENDMENT
13. VIOLATION OF THE 15TH AMENDMENT
14. 52 U.S.C. 20501

Plaintiff, hereby complains of Defendants as follows:

## INTRODUCTION

1.    American citizens deserve fair elections.  Every legal – not illegal – vote should be counted.  And no government power, be it federal, state, or local may deny American citizens the right to cast a legal vote and have that legal vote counted.  Official reports from the 2019 North Charleston Mayoral election show evidence that not all legal voters were allowed to vote, not all legal votes cast were counted, and illegal votes were added to a preferred candidate's total.

2.    Nothing less than the integrity of the 2019 Mayoral Election for the City of North Charleston and South Carolina's free & fair election process via the South Carolina Election Commission is at stake in this action.  Defendants, the very officials charged with ensuring the integrity of the election process in South Carolina, have so mismanaged the election process that no one – not the public at large, not the North Charleston voters, not Mayoral Candidate Singletary's campaign, and Not Candidate John Singletary – can have any faith that their most sacred and basic rights under the United States Constitution are being protected. The evidence is plain, Defendants have been and are blatantly violating the protections and procedures under the Constitution, including those enacted by the South Carolina General Assembly that are vitally necessary to ensure that votes of the citizens of South Carolina are not illegally diluted, adulterated by invalid ballots, fraudulent misrepresentations, and that the election is free and fair.

3.     The bedrock of American elections has been transparency, every critical aspect of South Carolina's November 5, 2019 North Charleston Mayoral Election was infested with actions of election fraud. This case is about the illegal construction of fictitious reports to support an illegal fabricated final election result by the Election Administration and their co-defendants.     The construction of fake exhibits, fake final results, fake absentee results, fake EVRL lists, a fake differential, fake nursing home reports, fake absentee reports, fake signed poll lists, fake official certified reports, and fake final results by administrative official, other co-defendants, and ESS are clearly illegal, irrefutable, and exist on the face of the official reports.

4.     Dorchester County according to SEC records in the 2019 election has a total of 17,364 eligible active voters, but denied nearly 84% of the eligible active voters in that county from voting by failing and refusing to add them to the EVRL database list during the election.  The abbreviated list disproportionally affected African American voters.  Only 16% of registered African American voters in Dorchester County were loaded into the EVRL database at the beginning of the election explaining why numerous African Americans were turned away at the polls crying with tears in their eyes even though they previously voted in the Mayor of North Charleston election. Worst is the fact that public records reveal after an 84% reduction in the

EVRL list <u>in some precincts only 4% of actual Africa American voters who actually voted had their ballot counted</u>. According to county election employees Josh Dickard and Todd Billman's protest testimony and report submitted under oath it shows the SEC and ES&S failed to add 14,281 active voters to the EVRL for the verification during the election, their report shows precincts exceeded 100% voter participation, their report shows poll list signatures were in excess of 300% of actual voters who voted, and their report shows when compared to the final results the county experienced a 100% voter participation of all voters in the county. The calculations above are undeniable and are based upon their official records.

Additionally, There were an unprecedented number of votes that were collected on machines located in illegal precincts not sanctioned, constructed, approved, or certified through the South Carolina Election mandated process requiring General Assembly approval. As a result all ballots collected in such illegal precincts by law must be declared illegal votes.

5. Charleston and Dorchester counties violated sections of Title 7 Chapter 25 and did not conduct the protest hearing in accordance with SC Code Ann. 5-15-130. Automatic disclosures mandated by law and discovery requested were denied. Protestant Singletary was also denied due process in presenting the evidence before the Election Board.

6.     Worse, according to testimony by county election employees bear witness that ES&S and the SEC violated 52 U.S.C § 10101; 42 U.S.C §1983; 42 U.S.C § 1985; 42 U.S.C. §1986; and the HAVA 2002.  While working in concert with each other the Commission's employee's testimony of Josh Dickard, Todd Billman, and Sam Howell all confirm that only 3,083 of the 17,364 SEC certified eligible active voters were loaded into the EVRL Database.  The law required the intire 17,364 should have been loaded into the EVRL database, but instead the duo of ES&S and the SEC with full knowledge of the county's 17,364 eligible voters chose to willfully deny 14,281 active voters their constitutional right to vote by loading only 3083 to vote. Working in concert with each other the aforementioned defendant's constructed, submitted to the tribunal, and continually revered to what is the County's "Exhibit C", a fictitiously constructed final results calculation for Dorchester County see this complaints exhibit A. Moreover, the record reflects and the Election Commission employees corroborate the egregious fact that ES&S "Electionware" copyrighted proprietary software was used to create multiple conflicting "Official Results" for every precinct in Dorchester County.  For example the records reflects on 11/07/2019 at precisely 13:27 PM an official result was generated as a report by Electionware, ESS's proprietary software, for the Patriot Precinct juxtapose on the same day 11/07/2019 at 13:10 PM another report was generated for the same Patriot Precinct just 17 minutes apart but reporting

- 6 -

vastly different result from what should have been the same database, see Exhibit B (the same exist for every precinct). The face of the document show one report showing a total of 143 Registered Voters existed for that Patriot precinct while the other states 1,551 Registered Voters existed for the very same precinct a difference of 1,408 voters. One report accounts for only one Absentee In Person vote while the other accounts for 4 Absentee In Person votes, a 400% difference. One report accounts for zero (0) Absentee Mail in votes while the other accounts for 4 Absentee Mail in votes. One report accounts for a total of 126 voters who voted while the other accounts for 133 voters who voted. One reports shows 88.11% voter participation while the other shows 8.58% voter participation. Both reports contradict the Ballots Cast Total of 126 on one and 133 on the other by accounting for only 5 votes as the total cast on the same titled report. One report is failing to account for 121 actual voters while the other fails to account for 128 actual voters. Incidentally, the 133 eligible voters listed in the Patriot Precinct has a racial break down, according to SEC records, of 3 Hispanic, 2 White, and 128 Blacks for eligibility to vote. The SEC records also show that 100% of the actual votes were Black. A total of 96% of the voters at the Patriot Precinct who did in fact vote were still denied being counted after they cast their ballot at the polls. Only African American voters who actually voted were found to have their vote not counted. Again, actual voters according to the SEC records for the Patriot precinct shows

only African Americans voted. Therefore only African Americans were denied votes being counted after they were properly cast. According to the official records every precinct in Dorchester County was riddled with similar mathematical miscalculations, tabulations, and mathematical impossibilities. In at least 2 Polling locations comprised of numerous precincts the County reported in excess of 100% voter participation and reported no less than 98.10% in every single precinct in the county. Other calculations show Dorchester county claims 3,083 voters were eligible to vote and 3,083 voters actual voted, amounting to a100% voter participation for the entire county. More astounding is the fact that attorney Sam Howell and Director Todd Billman both under oath with penalty of perjury confirm that one of the reports represents a "Simple Audit" that was run early in the day, approximately 10:00, to clear up a report regarding EVRL issues from active voters not being allowed to vote. The report was run as a result of a complaint regarding voter Smith, a long time resident of North Charleston who previously voted in the North Charleston Mayoral election, but in 2019 did not show up as a voter on the abbreviated EVRL Database list as a North Charleston registered voter. The entire Smith interchange was captured on video. Exhibit A is a copy of that "Simple Audit" report. Such being the case the question becomes how did the final results for the entire election show on a report ran nearly nine hours prior to the election ending? How did the final results show prior to 12:00 in the day? Either no

- 8 -

additional votes came into the precinct all day or the final report tally was pre-created which is why two sets of reports exist and in error the Directors by mistake published the two different files both that were copied, down loaded, and photographed. No doubt remains regarding the two separate official reports because the record reflects both reports and the Commission Employees give witness to the "Simple Audit" ran prior to 12:00 that reflect the final numbers of the entire election. It is an inarguable fact that the only way to publish final election results prior to the close of the election requires engaging in "Election Fraud" of a predetermine result. Furthermore, for two counties, two Directors to have total contradicting numbers for voter participation for the very same precincts based on one set of election machine tapes and still report the very same final results that are official requires a concerted effort of working in tandem via a well orchestrated pre-planed set of actions. Dorchester County in contravention to State law can only produce 100 Absentee Ballots with signatures some of which were altered based on notarized affidavits obtained from the actual voter who cast the absentee ballot. With only 100 absentee ballots applications Dorchester County Absentee Report shows 440 Absentee votes being cast. Incidentally incumbent Summey received more absentee votes in one precincts than the total number of Absentee ballot applications collected in the entire county and his total count of Absentee Ballots amounted to nearly 340% more votes than the total number of Absentee Ballot

applications collected in the entire county. When such actions are taken by those administering the election to assist an incumbent, who has been in office for thirty years, as a favored candidate by adding votes for him and subtracting votes from other candidates the actions amount to nothing short of " Election Fraud".

7.    The defendants with full knowledge of SC elections laws allowed several non-sanctioned precincts to be used during the election, which totaled more than the fictitious differential they sought to establish for overturning the elections.

8.    "The right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise. Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush v. Gore*, 531 U.S. 98, 104-05 (2000). All citizens, including South Carolinians, have a right under the United States Constitution to the full, free, and accurate elections built upon transparency and verifiability. Citizens are entitled – and deserve – to vote in a transparent system that is designed to protect against vote dilution and the artificial creation of votes for favored candidates. South Carolinians must be able to count on the guarantee that every eligible citizen has the opportunity to vote and participated in fair and impartial election with the assurance that every vote will count. In the 2015 election Charleston County

reported a precinct with 114% voter participation, and in 2019 Dorchester County reported several precincts with in excess of 100%. Dorchester County comprising of 25% of North Charleston active voters show that every single precinct had voter participation in excess of an unprecedented 98%. While every vote must count, fictitious, fabricated votes for the purposes of stuffing the ballot box for a favored candidate is a crime and must not be allowed. Attorney Sam Howell in his Respondent's Reply admits that numerous votes were counted from people who were not citizens of North Charleston and not eligible voters for the North Charleston Mayoral Election. North Charleston's history as the Department of Justice (DOJ) record reflects the incumbent Mayor Summey continually violated the law in preventing North Charleston African American voters from exercising their constitutional right to vote by illegally denying them annexation to the city even though they were used as citizens to hurdle the number requirement to become a city at inception. Today nearly 12,000 citizens, overwhelming African Americans, within north Charleston City boundaries cannot vote resulting in a diluted African American citizen voting base in North Charleston despite North Charleston's broken written promise to the DOJ it would annex and allow them to vote, see exhibit C.

9.     As evidenced by the official certified Patriot Precinct reports on Charleston County's Election Results Website, Defendants egregious acts

include – precincts that showed 100% African American participation where 96% of the ballots cast were simply not counted at all, only 4% of actual ballots legally cast were counted, The URL open to the public to see the Patriot Precinct "Official Result Precinct Report is below. (https://www.charlestoncounty.org0/departments/bevr/files/10110519-PrecinctResults.pdf).

10.    On Election Day, video taped precincts revealed Election Commission Poll Manager's video testimony of missing candidate names from ballots, official reports also confirm missing candidate names from ballots. The observations were in fact confirmed by the Elections Commission's Tech Consultant and when the Election Commission was asked to give direction of the intermittent missing names problem the Charleston County Election Commission instructed the Poll Managers to "say nothing about the problems and to handle the problems at the local site". Follow-up video confirmed voters relaying the same concerns to the Charleston County Headquarters Office where the Administration's statement by present Executive Director Isaac Cramer's was "Voters Lie and are Liars". Poll Manager (Grace Boland) at FDHS on video admitted to denying eligible active voters their constitutional right to vote. Poll Manager Grace Boland adds further insult to injury by stating "There was nothing she could do" about the dereliction of her duty and it was no big deal. She also made

- 12

mistakes in following SC statutory law of selecting the proper ballot style sheet for voters, incidentally she made the very same mistake on several occasions in several different locations and according to the record only with African American voters.

11.    Additionally, the court record reflects and the Defendant's records confirm a plethora of Absentee Ballots were counted in violation of SC Code Ann. 7-15-220.   Also collected are voter's notarized affidavits that voter's absentee ballots were destroyed and fictitious fabricated replacements without requisite signatures were counted instead denying the authentic voter's free choice from being counted, every legal vote must count.

The Supreme Court of the United States has made this clear in case after case. *See, e.g., Gray v. Sanders*, 372 U.S. 368, 380 (1963) (every vote must be "protected from the diluting effect of illegal ballots."); *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 196 (2008) (plurality op. of Stevens, J.) ("There is no question about the legitimacy or importance of the State's interest in counting only the votes of eligible voters."); *accord Reynolds v. Sims*, 377 U.S. 533, 554-55 & n.29 (1964).

The disparate treatment of South Carolina voters, in subjecting one class of voters to greater burdens or scrutiny than another, violates Equal Protection guarantees because "the right of suffrage can be denied by a debasement or dilution of the

weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Reynolds,* 377 U.S. at 555.

Video taped evidence show a hallway full of frustrated and crying African American only voters pleading to cast their vote only to be denied. Every voter denied their constitutional right to vote and have it counted at the Ft Dorchester Precinct was African American and the gate keeper was Grace Boland a Poll Manger who has been known in more than one precinct to select the wrong ballot style sheet for African Americans resulting in their denial to participate in the Mayoral Election for North Charleston.

## JURISDICTION AND VENUE

16.    Under 28 U.S.C. § 1331 & 28 U.S.C. § 1441, this Court has Subject-matter jurisdiction because this action arises under the Constitution and laws of the United. In addition Plaintiff makes known that the futility clause 28 USC 1983 and Common nucleus of operative facts, and Pendant Jurisdiction in United Mine Workers of America v. Gibbs :: 383 U.S. 715 (1966).

## VII.  Need for Emergency Judicial Intervention and Injunction.

153.  The Equal Protection Clause mandates that the State of South Carolina and Municipalities within it boarders provide and use standards and regulations when conducting municipal elections that do not abridge United States constitutional mandates.  In other words, the Equal Protection Clause requires every municipality in the State of South Carolina to enforce and apply equal protection voting safeguards for an election, and it does not allow a select few counties to either decline to enforce or employ discretionary standards or develop their own standards that abridge the Federal Constitution or State Constitution to benefit their favored choice of candidate to the detriment of opposing candidates.

154.  For state municipal elections involving Mayoral candidates, Defendants' allowance, by act or omission, of the collection and counting of in-person, provisional, and absentee and mail-in ballots in a manner and at locations that are contrary to the Election Code's mandatory provisions constitutes violations of the SC Elections Laws.

155.  Finally, the Defendants' lack of statewide standards and use of a patchwork of ad-hoc rules that vary from adding non-certified and unnecessary new polling locations in violation of statewide election laws, to the omission of 80% of Dorchester County eligible active voters equates to nearly ten times the customary differential which violates the Equal Protection clause of

- 16 -

the Fourteenth Amendment.

156. Because the standards in the conduct of municipal elections mandate the proper casting and counting of votes, Plaintiff has a vested interest in ensuring that the electoral process is properly administered in every precinct. However, the administration of the November 5, 2019 North Charleston Mayoral Election across Charleston and Dorchester counties of the South Carolina was far from meeting the mandates of the Federal Constitution and South Carolina's statutory law and did not follow the strictures of the Election Code for South Carolina.

157. In light of the Defendants' clear violations of SC Statutory Laws through their illegal mis-implementation of South Carolina's Election Code, Plaintiff seeks an order, declaration and/or injunction directing the Defendants to de-certify the 2019 North Charleston Mayoral Election and to use Easler v. Blackwell to correct the total, or order a new election.

158. The current voting regime as employed by Defendants has resulted in the denial of free and fair elections and other fundamental rights during the 2019 North Charleston Municipal Mayoral Election.

## Election Complaint

## Parties

Plaintiff at all times mentions resided at 4321 Waterview Circle, North Charleston, Charleston County, South Carolina, 29418.

Plaintiff is an African American male of 60 years old and a member of the general public, a South Carolina registered voter in Charleston County in the city of North Charleston, and a candidate for Mayor for North Charleston municipality.

Defendant(s), Election System Software, Inc. ("ES&S"), is a corporation, incorporated under the laws of Nebraska, with its principal office located in Omaha, Nebraska. Defendant sells it products in South Carolina, among other states. ESS product accuracy has national implications that will affect municipal, county, state, and national elections for in excess of 330 million Americans in the United States of America.

ES&S is the largest provider of voting equipment systems in the Unites States. ES&S provides more than 70 percent of the voting systems registered voters rely on to vote in federal, state, county, and local municipal elections held in the United States.

Defendant ES&S's products was designed, manufactured, purchased, installed,

and maintained per written solicitation number 5400016872 dated 12/7/2018, contract number 4400021704 and amendments for a term from 07-01-2019 thru 06-30-2026 for use by ultimate consumers (eligible voters) in South Carolina for the purposes of casting legal ballots in SC elections and having them accurately tabulated, calculated, and reported. This product was advertised by defendant in South Carolina among other states in Request for Proposals, internet website, publications, etc. and is known to the public as ES&S voting systems.

South Carolina Election Commission - is the State of South Carolina's election regulatory commission with the responsibility for election and have a supervisory role in carrying out fair elections in the state.

Marci Andino (Director 2019) - is the Director of the South Carolina Election Commission who oversaw the County election process and who stated she would not report the illegal and fictitious Exhibit C constructed in Dorchester County to the South Carolina Law Enforcement Division.

Charleston County Election and Registration Board - is a body politic and county in South Carolina where North Charleston is located and the primary contractor to whom North Charleston gives the responsibility to carry out fair elections.

- 19 -

Samuel Howell (Attorney for Charleston County) The County Election Board Attorney responsible for legal matters.

Joe Debney (Director 2019) - was the Director for Charleston County Board during the 2019 election responsible for carrying out fair elections.

Issac Cramer Director - is the present Director for Charleston County Board and was an executive with the Board in 2019 during the election.

Beverly Varnado Chair - Is the Chair of Charleston County Board responsible for ensuring fair elections and served as the presider of the 2019 Election Protest.

Carol Lecque Board Member - Carol Lecque is a Board member for Charleston County who testified that she violated SC Secrecy Law during the protest by testifying she viewed voter ballots.

Dorchester County Election and Registration Board - is a body politic and one of the three Counties in South Carolina where North Charleston is located. They are responsible for carrying out a fair election process in Dorchester County that report accurate election results.

Todd Billman (Director 2019) - is the Director for Dorchester County that submitted and testified to the authenticity of the fictitious Exhibit C to the

- 20 -

election board and oversaw the electon reports that are incorrectly tabulated and calculated in Dorchester County.

Queen Bowman (Chair) - is the Election Board Chair for Dorchester County to oversee the election process.

Charles Lee (Election Analyst 2019) - Charleston Lee is the Dorchester County Election Analyst that created the fictitious Exhibit C for the election protest.

Cathy Boland (Clerk FDHS 2019) - is a Clerk for Dorchester County who served in at Summerville for Absentee voting and at Forth Dorchester High School the day of the election. In each location she denied voters their right to vote by giving wrong ballot style sheets that went to African Americans Only.

North Charleston Municipality - is a body politic and municipality in South Carolina residing in Charleston, Dorchester, and Berkeley Counties.

Keith Summey (Mayor 2019) - Keith Summey is the incumbent Mayor of North Charleston that ran in 2019 and benefited from the illegal acts of all other defendant's to illegally recapture the position as Mayor of North Charleston.

Ron Brinson (City Councilman 2019 in Dorchester County) - is North Charleston City Councilman for District encompassing Dorchester County and according to Director Todd Billman was present and participated in constructing and using the illegal Westcott precinct not included in the statutory mandated public notice.

Ed Barfield (Recreation and Facility Director 2019) - is the Recreation and Facility employee for the City of North Charleston who according to Dorchester County Board Director Todd Billman participated in the initiative to construct the illegal Westcott precint, use the illegal Westcott precinct not placed in the statutory mandated public notice and gave access to the facility for use.

Brady Hair (City Attorney 2019) - Defendant Brady Hair is the North Charleston City Attorney and according to Dorchester County Director Todd Billman participated in the initiative to construct and use the illegal Westcott precinct not placed in the statutory mandated public notice in order to collect illegal votes for incumbent Mayor Summey.

and others to be named. Each of the above mentioned defendant's are being sued in their personal capacity and their professionsl capacity. North Charleston and the County Boards are all being sued a a person under the

law (Will v. Michigan Department os State Police). Their employees are being sued in their official capacity. The state SEC official, Marci Andino, is also being sued in her personal capacity.

In South Carolina to include the SEC, the custom and usage of denial of constitutional rights to vote and denial of access to the franchise has the force of law in this state, in Charleston County, in Dorchester County, and in the city of North Charleston. (Adickes v S.H. Kress & Co.) Because of this state-enforced custom of failing and refusal to grant access to the voting both and candidate ballot. In addition, the State, County, and Municipality's continual foreclosure of African American rights to the franchise. The undisputed history of preventing African American's right to vote, have their vote counted, undergo voting strength dilution, and the denial to run for office on the same bases as other candidates, even though no recent state statute promoted racial denial in voting and or opportunity to run on the same bases as all other candidates still the enforcement of such actions continues to amount to the very same denial as if it were still a codified state law. The aforementioned action can be seen in the SC Negro Constitution, Elmore v Rice, and North Charleston's DOJ documents. The actions of the defendants occurred under color of law and each and every deprivation deprived the plaintiff of rights, privileges, or immunities

- 23 -

guaranteed under federal law of the U.S. Constitution. The right, privileges etc. were in acted specifically to protest and benefit citizen such a plaintiff Singletary.

Operative Facts

The United States Constitution and the South Carolina Constitution protects the right of South Carolina voters in elections. The right to vote, one of the most important rights in our democratic society, is fundamental. The right to vote is protected by law in the US Constitution the SC Constitution and numerous federal and state statues.

The equal protection clause of the Fourteenth Amendment to the United States Constitution guarantees qualified voters a substantive right to participate equally with other qualified voters in the electoral process. The equal right to vote is protected in more than the initial allocation of the franchise because equal protection applies to the manner of its exercise as well.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution guarantees qualified voters a substantive right to vote as a protected

liberty interest. There is an imminent risk that the plaintiff will be irreparably harmed by the defendants' conduct, because votes cast in the election on Nov. 5, 2019 were altered by persons who were under supervision and control of the SEC and that County Election and Registration Board.

The plaintiff's right to vote and run as a qualified candidate under the United States Constitution is protected by 42 U.S.C 1983.

At all times defendant(s) were acting by authority and under color of law and actions resulted in with race based hostility and deprivation. By there conduct described above, the defendants have acted and will continue to act to deny the plaintiff his right to vote and run as an equally qualified candidates under the United States and South Carolina Constitution.

ESS's Voting Solution System (VSS) provided failed to operate properly. The duty owed to the plaintiff, the SEC and all voting citizens in the North Charleston 2019 election was that the voting system would be manufactured, assembled, tested, installed, with due care and operate properly. ESS's VSS is referred to as a "Product" in excess of 25 times in their contract to include the hardware and output reports. In addition ESS provided some soft services ongoing maintenance, training, and updates as necessary in the contract. The testing lab for which ESS used to certify its product CIBER Inc. was decertified by the Election Assistance Commission (EAC)

- 25 -

in a letter from EAC Chair Donetta Davidson on June 13,2007.

The EAC also rebuked ESS in a letter on January 7, 2020 for false claims in marketing material and promotional literature, misrepresentations, and statements that their machine was EAC-certified.   ESS's reckless actions put ESS's in violation of the EAC's testing and certification rules.  The ongoing and recurring pattern and practice of misrepresentation has been proven by ESS's reckless behavior that it will continue until there is a judicial override that will protect the United States voting population from the single largest voting machine vendor's intentional, malicious, and reckless conduct and actions..........................................................ESS failed to exercise the requisite degree of care; and as a proximate result of ESS's failure to exercise due care, the computer system failed to function properly, causing plaintiff to sustain irreparable economic injury.

## Allegations

On or about October .......2019 North Charleston through its designated assignee Charleston (primary) and Dorchester County all supervised by the South Carolina Election Commission while using ESS'S Voter Solution System commenced the absentee process for conducting the North Charleston 2019 Mayoral election. Plaintiff John Singletary an African American was a challenging candidate to Mayor

Keith Summey a Caucasian incumbent who has been in office for 28 years. The initial publications of results that were ongoing to the public revealed a close race with challenger Singletary slightly leading incumbent Summey. North Charleston is South Carolina third largest city and one of the states richest city. Only following the entry of Singletary into the Mayoral race has North Charleston's African American community's voter participation exceed out votes of other sectors of the city's population combined. Black voter participation has quadrupled since Singletary began his bid for Mayor of North Charleston and out paced the next closest sector of Whites by 2:1.

During the protest hearing Board employees Charles Lee and Todd Billman presented a fictitious "Exhibit C" document (in this complaint it is Exhibit A) of tabulations as the official results of the election. The Exhibit C document is fictitious on its face. The document has arithmetic, logical, and compilation errors that are mathematically impossible and in contradiction to the final results from the South Carolina Election Commission and the ESS final official reports published. Several precincts in the Exhibit C exceed 100% voter participation and claims to have 300% more voter signatures in some precincts than the total number of voters eligible to vote in that precinct. The final tally for incumbent Mayor Summey was padded. The final official tally of the North Charleston Mayoral election reported to the public showed incumbent Summey with a total of 5614 votes to challenger Singletary's

4056 votes. Three other candidates Thomas Dixon received 1286 votes, Ashley Peele received 854 votes, and Floyd Dotter Received 207 votes. 1558 votes was the reported differential between the incumbent Summey and the next Closed challenger Singletary. Further, analysis of the final official results provided by ESS as certified revealed more egregious errors and omission than the fictitious Exhibit C.

ESS and the SEC, according to the Election Board, in an unprecedented display worked together and loaded for the first time ever what was to be all eligible active electorate voters for Charleston and Dorchester Counties into the Election Verification List (EVRL) database. Further inspection of the SEC's certified HAVA 2002 list of eligible active voters for North Charleston Voters reveal Dorchester County hand picked only 16% of its voters to load for voting the day of the election. Out of 17463 eligible active voters in Dorchester County only 3083 were loaded leaving 14281 eligible active voters unable to vote on the same bases as all other voters because they were not loaded into the EVRL system as if they were non-voters. Moreover, further analysis of the official records reflect in some precincts ESS's certified official results only counted 4% of African American voters who actual cast their ballots. The record reflect ESS software enlarged the absentee votes by in excess of 400% with the incumbent receiving more absentee votes in a single precinct than the entire number of absentee ballots cast in the entire county.

The failure of the Board to give statutory public notice of numerous precincts renders

said precinct and polling location votes illegal. The illegal precinct votes and the Absentee votes together outnumber the differential.

The Board, and SEC states they have lost every single signature required by law to render a vote in the county as legal. After claims of in excess of 100% voter participation in county precincts and a claim of 100% voter participation for the entire county the Board and SEC purports they have absolutely no signatures whatsoever for the entire county which renders all county votes illegal and overshadows the differential to overturn the election by 2 to 1. South Carolina Supreme Court case Easler v Blackwell gives a compulsory prescriptive calculation that must occur when illegal votes are counted and legal votes non-counted are found. In either of the three scenarios the irregularities are in excess of the miscalculated differential.

Furthermore, the certified official results record support the fact that the official final result is incorrect, that every calculated precinct report in Dorchester is incorrectly calculated, several precinct reports in Charleston County are incorrect rendering the differential calculated by the Board to be incorrect and inconsistent with the mathematical facts. On several occasions the County has provided multiple final results neither which are consistent to the final to the public.

Immediately following the election contest challenger Singletary filed a timely protest and requested automatic statutory discovery and other discovery. The Board of Election and Registration failed and refused to surrender the requisite discovery mandated or to carry on a protest as prescribed by law. The certified printed record and ESS's official results reflects that the official certified results are incorrect and represent no resemblance of the actual vote counts for the election. The documented irregularities found were sufficient to render the outcome of the election doubtful and to overcome the erroneous differential between presented between the challenger Singletary and the incumbent Summey.

The protest hearing resulted in a decision of the Election Board to not overturn the election. Plaintiff Singletary alleges violations of due process due to the Board failing and refusing to (1) surrender mandated automatic and required discovery (2) the Boards failure and refusal to allow protestant to present evidence (3) a fictitious exhibit submitted by the Board's Director during the proceedings (4).

Following the protest an appeal was sent to the state court where a motion hearing ended in a kangaroo court hearing where protestant motions were not heard and in transgression to a standing order from the Administrative Judge to have a subsequent hearing no hearing has been scheduled. Several motions to the court have been

ignored and the state court has gone completely silent rendering Protestant efforts futile and under the futility clause, violation of due process, violation of equal protection, violations of 5th, 14th, an other constitutional violation Plaintiff Singletary files a complaint and contemporaneously removes the state court to federal court because of the Common-nucleus of facts.

## Cause of Action I

## Breach of Contract

The parties to SC Contract 4400021704 agreed in writing that vendor ESS's VSS product would satisfy certain election tabulation, compilation, and final result accuracy obligations. ESS's VSS product failed to satisfy those obligations. In addition to the primary VSS product ESS also contracted to provided collateral support and maintenance obligations. As a result of ESS's VSS system defective performance the system failed to perform properly creating grossly inaccurate election final official results. In addition the grossly inaccurate final official reports additional precinct reports for the entire county shows the system is incapable of performing properly. ESS's agrees that unless the court orders discovery and analysis of it source code it is impossible to ascertain whether the logical, arithmetic, compilation, and tabulation errors to be uncovered.

- 31 -

Thus under Rule 65 plaintiff request an immediate court order for discovery of ESS's source code to be surrendered for analysis by the plaintiff's expert team and ESS product not be allowed to be used in SC until an explanation for multiple results be scientifically and mathematically determined.

## Cause of Action II

## Strict Product Liability--Design Defect

Plaintiff refers to and fully incorporates by reference each of the prior paragraphs of this Complains as though the same were repeated verbatim at length herein. In addition at no time did ESS warn the plaintiff of the VSS product's propensity to generate faulty results as a result of its faulty source code.

Defendant ES&S is a designer, manufacturer, source code programmer, seller, and maintenance corporation of ES&S's Voting System Solution product that malfunctioned resulting in irreparable injury and damage to Plaintiff. SC purchased ESS

As a designer, manufacturer, source code programmer, seller, and maintenance turn key solutions corporation including the faulty ES&S's Voting System Solution product, Defendant had duty of care to place in to the stream of

commerce products that were free of design and/or manufacturing defects so as to be reasonably safe when used as intended.

The ES&S's Voting System Solution product at issue in this case was defectively designed. The risk inherent in its design outweigh any utility of design, particularly in light of technologically available and economically feasible alternatives procedures and modules that would produce more accurate tabulations and calculations and not have materially undermined the utility of the product and would have been safer in protecting the will of the people through greater accuracy of free, fair elections when used as intended.

Election Results and Reports are by-products of source codes and should be accurate source code. When reports are accurate is stands to reason that source code is correctly written and operating. However when reports produce egregious errors in results from miscalculations, erroneous tabulations, it stands to reason there are arithmetic, logical, and compilation errors, or errors in syntax in the underlying source code and as such even when operated as intended gross injuries and damages of historical significance can and will occur. The ES&S's Voting System Solution product was unreasonably dangerous in one or more of the following ways: (a) The subject ES&S's Voting System Solution product lacked a protective cross checking and checks and balance tabulation and calculation coding mechanisms that would keep

- 33 -

foreseeable miscalculations and erroneous tabulations from occurring. (b) The subject ES&S's Voting System Solution product lacked logic, compilation, and arithmetic mechanisms that would give alerts regarding such foreseeable errors. (c) The subject ES&S's Voting System Solution product was such that in foreseeable events like the highly contested municipal elections in North Charleston and any other election would need to have the EVRL List cross checked with the HAVA2002 SEC certified poll list for an accurate count of the "Registered Voters Total", Ballots Cast Total vs. Total Votes Cast. In addition The Ballot Precinct's Public Notice were incorrect.

For the above stated reasons ES&S's Voting System Solution product was unreliable, undependable, untrustworthy, reckless, destructive and deadly to any attempt to hold a free and fair election the would represent the will of the people in a democratic form of elections.

## Cause of Action III

## Negligence Per Se

Plaintiff refers to and fully incorporates by reference each of the prior paragraphs

of this Complains as though the same were repeated verbatim and at length herein.

Defendant, acting through its officers, agents, servants, representatives, or employees negligently and recklessly misrepresented the following material facts regarding the quality, accuracy, and character of the ES&S's Voting System Solution product: (a) The final results were incorrect, (b) the precinct reports were incorrect, (c) the EVRL Database loaded for the election was incorrect, (d) Public Notice for Precincts to vote was incorrect, (e) Exhibit C was incorrect, (f) absentee ballots counted was incorrect, (g) the signed poll lists, (h) the nursing home reports, (i) and the equations within the program to calculate totals were all faulty and produced incorrect results. These misrepresentations were made under circumstances in which defendant, acting through its officers, agents, representatives, or employees, either knew, or in the exercise of reasonable care should have known, that the various facts on which such misrepresentations were based were not true or were not known to be true.

The misrepresentations alleged above were further reiterated and disseminated by defendant's officers, agents, servants, representatives, or employees acting within the course and scope of their authority to merchandise and market the ES&S's Voting System Solution product.

- 35 -

Plaintiff's State SEC for the state and plaintiff's use in reliance on the truth of the misrepresentations in defendant's advertising, consulting, RFP answers, and contract by defendant purchased the ES&S's Voting System Solution product via South Carolina Procurement Contract 4400021704 for a term beginning 07-01-2019 and ending 06-30-2026.

While using the ES&S's Voting System Solution product in accordance with the defendant's assistance and printed instructions, plaintiff sustained the following injuries: violation of constitutional rights and loss of election, loss of campaign fund expended, loss of salary, loss of impact on community, loss of cost of protest, loss of cost of appeal, loss of cost of filing federal lawsuit.

As a direct and proximate result of the injuries described above, defendant uncured the following damages: (a) The final results were incorrect, (b) the precinct reports were incorrect, (c) the EVRL Database loaded for the election was incorrect, (d) Public Notice for Precincts to vote was incorrect, (e) Exhibit C was incorrect, (f) absentee ballots counted was incorrect, (g) the signed poll lists, (h) the nursing home reports, (i) and the equations within the program to calculate totals were all faulty and produced incorrect results. violation of constitutional rights and loss of election, loss of campaign fund expended, loss of salary, loss of impact on community, loss of cost of protest, loss of cost of appeal, loss of cost of filing federal lawsuit

The malfunctioning ES&S's Voting System Solution product to include the ES&S's Voting System Solution product's source code were a direct and proximate cause of the injuries ad damages suffered by plaintiff. Except for defendant's representations concerning the accuracy, tabulation, and compilation of the products final reports, plaintiff's State SEC would never have purchased it or used it. Except for the falsity of defendant's representations, plaintiff would never have sustained the injuries and damaged alleged above.

## Cause of Action IV
## Breach of Express Warranty

On or about 07-01-2019 Defendant's product was purchased by South Carolina Tax payers through South Carolina Election Commission (SEC) based upon the advertising, consulting, written warranties, guarantees, and certifications presented by ES&S.

During SC Absentee voting period and on election day November 5, 2019 ES&S's product was in use in Charleston and Dorchester County's for the municipal election for the city of North Charleston.

- 37 -

While in use ES&S's product malfunctioned producing arithmetic, logical, and compilation errors in tabulation and calculations for which ES&S published in Summary Reports, Precinct Reports, and other reports in header as "Official Results" for the election which caused irreparable injury, harm, and damage to plaintiff. ES&S generated and published reports with footer caption "Report generated with Electionware Copyright (c) 2007-2018" and caused damages and injuries to plaintiff which are more fully alleged below.

Plaintiff's injuries, harm, and damages include but are not limited to the following:

Prior to the purchase of ES&S's voting system product as alleged above, defendant through written contract 4400021704 with South Carolina Procurement Services expressly warranting to consumers, which includes plaintiff as a voter, and particularly as a candidate, by advertisement, and thru solicitation 5400016872, and contract 4400021704 that they, including this plaintiff, could safely use and rely upon the ES&S Election Voting System product for accurate tabulations and calculations of election contest. Defendant expressly warranted the ES&S Election Voting System product and provided multiple, so called, accuracy reports as confirmation of it product's accuracy with an acceptable standard deviation in errors. ES&S's Voting System Solution product on page 18 of the Request for Proposal in the Scope

of the Proposal ES&S agrees to South Carolina mandate of two types of certifications. First, the Voting System Solution (VSS) must be certified by a testing laboratory accredited by the Federal Election Assistance Commission (EAC) as meeting or exceeding the minimum requirements of federal voting systems standards as required by S.C. Code of Laws Section 7-13-1330 and 7-13-1620 prior to the proposal due date on March4, 2019. Second, the VSS must obtain state certification as required by S.C. Code of Laws Section 7-13-1320, 7-13-1330, 7-13-1340, 7-13-1620, 7-13-1640, and 7-13-1655, as well as an other applicable sections in Title 7 of the S.C. Code, no later than April 12, 2019, each of the aforementioned S.C. Code of Laws are listed under SC Codes in the Appendix. ESS at the very least is in violation of each of the aforementioned statutes because the software produced multiple conflicting results for the same election. The laboratory Alpha tests and field Beta tests provided by ESS for the contract were consistent with the requisite qualifications for the voting system contract. However ESS's VSS did not repeat the same accuracy on the day of the election Nov. 5, 2019 due to a gross and egregious malfunction of its product. In purchasing and using ES&S's Voting Solution consumers including Plaintiff's state of South Carolina relied on Defendant's express warranties regarding "Tabulate ballots at precincts", "Tabulation and reporting", "Tabulation of results and conducting post-

election audits", "Logic and Accuracy (L&A) testing" in the written contract to be true regarding the products accuracy in tabulation and calculation of ballots properly.

When consumer's and Plaintiff's home state of South Carolina purchased the product ES&S Voting System Solution product, defendant's express warranties concerning it were not true and ES&S's Voting System Solution product was not safe or reasonable for any democracy anywhere especially North Charleston to tabulate, calculate, or publish reports as accurate "Official Results" suitable to represent the will of the people's choice in a free and fair election. Defendant's breach of express warranties and defective source code was a proximate cause of the plaintiff's injuries alleged above.

On or about November 7, 2019, plaintiff gave defendant written notice of the description of breach of warranty via a protest filed with Charleston County Election and Registration Board operating as a subcontractor agent for the City of North Charleston and under the oversight of the SEC who contracted with ES&S and communicated with them continuously. A copy of the protest is attached from the court below, and incorporated by reference.

**Cause of action V**

**Breach of Implied Warranty**

**(of Merchantability & for a Particular Purpose)**

Plaintiff refers to and fully incorporates by reference each of the prior paragraphs of this Complains as though the same were repeated verbatim and at length herein.

During North Charleston's Absentee Voting period and on November 5, 2019 the day of the municipal election, while other consumers in the stream of commerce and plaintiff was using ES&S's Voting System Solution product for the purposes of casting legal ballots in the North Charleston 2019 Municipal Election for accurate tabulation, calculation, and reporting the product malfunctioned. As a direct result of the malfunction of the ES&S Voting Systems Solution product, plaintiff sustained injury and damages alleged below.

Defendant impliedly warranty that the ES&S's Voting System Solution product, the purpose for which it was designed and manufactured, that it was safe and suitable to be used in South Carolina, Charleston and Dorchester Counties,

North Charleston, and the ES&S's Voting System Solution product was fit and suitable for the use defendant sold it to consumers in the stream of commerce and SEC for use by plaintiff.

In purchasing and using ES&S's Voting System Solution product the SEC and plaintiff relied on defendant's consulting, skill, judgment and implied warranty of fitness for the purposes of which plaintiff's State SEC purchased and plaintiff used ES&S's Voting System Solution product.

The ES&S's Voting System Solution product was not fit for use for its intended purpose and as a result of defendant's breach of warranty of fitness of the ES&S's Voting System Solution product, plaintiff sustained the following injuries: (a) The final results were incorrect, (b) the precinct reports were incorrect, (c) the EVRL Database loaded for the election was incorrect, (d) Public Notice for Precincts to vote was incorrect, (e) Exhibit C was incorrect, (f) absentee ballots counted was incorrect, (g) the signed poll lists, (h) the nursing home reports, (i) and the equations within the program to calculate totals were all faulty and produced incorrect results. violation of constitutional rights and loss of election, loss of campaign fund expended, loss of salary, loss of impact on community, loss of cost of protest, loss of cost of appeal, loss of cost of filing federal lawsuit

As a direct and proximate result of the injuries sustained, as alleged above, plaintiff incurred the following damages: (a) The final results were incorrect, (b) the precinct reports were incorrect, (c) the EVRL Database loaded for the election was incorrect, (d) Public Notice for Precincts to vote was incorrect, (e) Exhibit C was incorrect, (f) absentee ballots counted was incorrect, (g) the signed poll lists, (h) the nursing home reports, (i) and the equations within the program to calculate totals were all faulty and produced incorrect results. violation of constitutional rights and loss of election, loss of campaign fund expended, loss of salary, loss of impact on community, loss of cost of protest, loss of cost of appeal, loss of cost of filing federal lawsuit

On or about Nov. 7, 2019, plaintiff gave defendant's state contact SEC through its oversight of Charleston and Dorchester Counties Election and Registration Boards written notice of the incorrect tabulations and calculations and the injuries and damages sustained by plaintiff as a result of the breach of warranty. Plaintiff also, requested the ES&S's Voting System Solution product source code to track down and show ES&S, the errors in its source code. A copy of that notice is attached as the Protest Notice, and incorporated by reference.

## CAUSE OF ACTION VI

## MISREPRESENTATION

Plaintiff refers to and fully incorporates by reference each of the prior paragraphs of this Complains as though the same were repeated verbatim and at length herein.

Defendant ESS"S representation that the VSS Computer System product had the capacity to satisfy Plaintiff's needs was false.

ESS mad the foregoing misrepresentation knowingly, willfully, and/ or with reckless disregard fo its falsity.

Defendant made the forgoing misrepresentation with the intent of inducing Plaintiff to purchase the VSS Computer System product.

Plaintiff, relying on the foregoing misrepresentation, purchased the VSS product and attempted to run an election with ESS VSS product.

As a proximate result of Defendant ESS's misrepresentation, Plaintiff's state purchase of $51 million was waste, and Plaintiff John Singletary suffered

damages as follows: (a) The final results were incorrect, (b) the precinct reports were incorrect, (c) the EVRL Database loaded for the election was incorrect, (d) Public Notice for Precincts to vote was incorrect, (e) Exhibit C was incorrect, (f) absentee ballots counted was incorrect, (g) the signed poll lists, (h) the nursing home reports, (i) and the equations within the program to calculate totals were all faulty and produced incorrect results. violation of constitutional rights and loss of election, loss of campaign fund expended, loss of salary, loss of impact on community, loss of cost of protest, loss of cost of appeal, loss of cost of filing federal lawsuit

## CAUSE OF ACTION VII

## 42 U.S.C. 1983

Plaintiff refers to and fully incorporates by reference each of the prior paragraphs of this Complains as though the same were repeated verbatim and at length herein. Each defendant acting under color of law

The right to vote and or be a candidate for election on an equal basis with other

citizens is a fundamental right in a free society. Indeed, in any viable form of representative government the freedom to vote, have your vote counted, or be a candidate when qualified must be allowed and protected.

The U.S. Constitution grants, guarantees, and protects "The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude." The statute is violated if under the totality of circumstances it is shown that the political process leading to nomination or eletion are not equally open to participation by member of a class of citizens. (Ortiz v City of Philadelphia off ice of City Com'rs Voter Registration Div.) When based upon the totality of circumstances an electoral procedure operates to deny minority voters equal access to the political process.

The Supreme Court wrote in Thornburg v Gingles. The essence of such a claim is that a certain electoral law, practice, or structure interests with social and historical conditions to cause and inequality in the opportunities enjoyed by black and white voters to elect their preferred representatives. That is too say the Supreme Court recognizes that their must be some causal connection between the challenged electoral practice and the alleged discrimination that results in a denial or abridgment of the right to vote Ortiz v City ofPhiladelphia Office of City Com'rs Voter Registration Div.

- 46 -

Each Defendant's conduct and action failed to afford Plaintiff the minimum due process requirement guaranteed to Plaintiff when each defendant engaged in at least one act in furtherance of the conspiracy to deny votes to be properly cast, ballots to be properly, counted, the correct final tabulation to be published, and the fictitious final election results to be published.

Defendant's actions violated Plaintiff's rights to participate in and election on the same bases as other candidates, to cast his vote, have it counted, and have an accurate tabulation of the municipal mayoral results published.

As a proximate result of Defendant's conduct, Plaintiff has suffered, and will continue to suffer general damages, including intentional infliction of emotional distress, mental anguish, humiliation, fear, anxiety, loss of personal and professional reputation.

As a further and proximate result of Defendant's conduct and actions Plaintiff has suffered, and will continue to suffer special damages, including loss wages and benefits, loss of future earnings, retirement earnings, other employment benefits, out-of pocket expenses, and other economic losses.

As more fully described above, Defendants violated Plaintiff's rights intentionally, maliciously, and with conscious disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to recover punitive damages from Defendants in an amount

according to proof.

By reason of the described conduct of Defendants, Defendants, and each of them, are liable to Plaintiff under 42 U.S.C. A . 1983 for injuries suffered by Plaintiff, in their conduct deprived Plaintiff of rights, privileges and immunities given Plaintiff by the United States Constitution and the South Carolina Constitution.

This action concerns a recent election in North Charleston SC during a Mayoral Election where procedures, actions, tacit endorsements, and malicious alterations resulted in egregious, willful, and intentional, irregularities sufficient to render the outcome doubtful and to exceed all differentials such the outcome would change the outcome of the election.

In violation of The National Voter Registration Act of 1993 (NVRA) - 52 U.S.C. 20501 the SC SEC and ESS ignored the mandatory procedures where they unlawfully denied 14,281 voters the right to vote on the same bases as all other voter in the County with a disproportionate affect on African American. Moreover ESS with tacit endorsement from the SEC after allowing only 16% of African American in Dorchester to be loaded into the EVRL database added insult to injury by only counting 4% of African American voters in some precincts such as Patriots.

- 48 -

Defendant's while clothes with the color of law deprived Plaintiff John Singletary and others of his clearly established constitutional right to vote, have his vote counted, and the right to run as a candidate for the Mayor of North Charleston on the same bases as all other candidates.

Defendant's deprived voter/candidate Singletary and others of their federally protected right to vote, have that vote counted, and run as a candidate on the same bases as all other candidates while acting under color of law.

Defendant's intentional and unlawful acts of deprivation would be clear to a reasonable official under the circumstances.

## CAUSE OF ACTION VIII

### 42 U.S.C. 1985

Plaintiff refers to and fully incorporates by reference each of the prior paragraphs of this Complains as though the same were repeated verbatim and at length herein.

Two or more Defendant's while acting under color of law conspired to illegally deprive Plaintiff John Singletary and others of a constitutional federally protected and state protected right to vote, have that vote counted, and to run for public office on the same bases as all other candidates, namely Keith Summey, in the North Charleston Mayoral Election.

Through a mutual understanding working in concert with each other denied Plaintiff Singletary and others federal and state constitutional right to vote and participate in an election for public office on the same bases as all other candidates, namely incumbent Keith Summey.

## CAUSE OF ACTION IX

### 42 U.S.C. 1986

Plaintiff refers to and fully incorporates by reference each of the prior paragraphs of this Complains as though the same were repeated verbatim and at length herein.

One or more of the Defendant(s) failure to intervene to protect Plaintiff's rights to a fair a fair election and fair and impartial hearing.

As a result of Marci Andino and other Defendant(s) failure to intervene, Plaintiff suffered injury, as well as emotional distress. Plaintiff's recorded conversation

with SC Director for Elections Marci Andino result in her admission Dorchester County's "Exhibit C" was incorrect and her statement would refused to inform SLED of the irregularities that occurred in the Dorchester incorrect results. In addition, Plaintiff Singletary suffered financial losses stemming from Defendants failure to intervene.

The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to the rights of others.

The misconduct taken in this count was taken under color of law such that defendant City of North Charleston, Charleston County Board and SEC are liable for their actions.

## CAUSE OF ACTION X

### 1st Amendment, 5th Amendment, 14th Amendment

### 52 U.S.C. 20501, § 10101, and § 10103

Plaintiff refers to and fully incorporates by reference each of the prior paragraphs of this Complains as though the same were repeated verbatim and at length

herein.

Defendants are in violation of 52 U.S.C. 20501, § 10101, and § 10103. As a consequence off Defendants misconduct of errors and omissions in failing to load the entire North Charleston Dorchester County Voter Database into the EVRL table 14,281 eligible register voters who were disproportionately African Americans, were denied their legal right to vote on the same bases as other voter in the County, particularly those who are white. African American votes properly cast were not counted.

Defendant's conduct in violation of Section 8 of NVRA has injured and will continue to injure Plaintiff because Defendant's conduct has caused and will cause Plaintiff denial of the victory he won, caused Plaintiff to invest in legal fees, loss of income resulting irreparable damages.

Defendant's past historical posture and continuing violation of the NVRA has aggrieves and continues to injure Plaintiff without any adequate remedy at law. Plaintiff requests remedy consistent with the South Carolina Supreme Court case Easler v Blackwell as a remedy for calculations.

- 52 -

WHEREFORE, Plaintiff requests Compensatory, Punitive, Consequential, Pecuniary, Aggravated, Nominal, Restitution Damages, attorney fees and cost of a sum certain of $75,000,000.00. In addition to any other affirmative relief that the Court may deem necessary and proper, Plaintiffs ask this Court to enter judgment in their favor and in addition to provide the following supplemental relief:

i. An order, declaration, and/or injunction that instructs the Defendant County Boards of Elections and Defendant SEC to de-certify the results of the 2019 Mayoral Election in Charleston and Dorchester County for the City of North Charleston;

ii. An order instructing the SEC, Dorchester, and Charleston County Election Boards to declare Candidate John Singletary the winner of the 2019 Mayoral Election in Charleston and Dorchester County for the City of North Charleston;

iii. In the alternative of declaring candidate Singletary the winner of the election Plaintiff request this Honorable Court will order the SEC, Dorchester, County, Charleston County, and North Charleston City to conduct a new election in place of the 2019 Mayoral Election held on Nov. 5, 2019.

iv. A temporary restraining order and preliminary injunction granting the above relief during the pendency of this action; denial of ESS to use the defective product in SC until such time their product has been proven scientifically and

v. In addition to the sum certain, Plaintiffs' reasonable costs and expenses of this action, including attorneys' fees; and cost; and

vi. All other further relief to which Plaintiffs might be entitled.

Date:  Nov. 4, 2022

Respectfully submitted,

John Singletary

By: /s/ John G. Singletary Jr.
John G. Singletary
john@singetaryphotography.com

- 54 -

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have reviewed the foregoing Complaint and that the factual allegations are true and correct.

Date: Nov. 4, 2022

/s/ John G. Singletary Jr.

John G. Singletary Jr.

## CERTIFICATE OF SERVICE

Defendants' hereby certify that the above documents have been emailed to the opposing council and all relevant parties.

Dated: Nov. 4, 2022.

Respectfully Submitted

John Singletary

(843)693-2823

4321 Waterview Circle

North Charleston, SC   29418